*In re* SCHNAPKA.

1. TIME—COMPUTATION—SERVICE—PROCESS—NOTICES.

The rule that fractions of a day are not recognized in law, and that in computing the time for service of process the day of issuance is excluded and the day of appearance included, does not apply to notices measured by hours.

2. INSANE PERSONS—COMMITMENT—NOTICE—SUFFICIENCY.

An order of the probate court, entered on March 31st, fixing April 1st, at 4 o'clock in the afternoon, as the time of hearing on a petition for the commitment of an alleged insane person, and requiring service on her of notice of the proceedings at least 24 hours before the time set, and a sworn return of service of the required notice dated March 31st, followed by an order of commitment reciting that due notice as required by law and directed by the court had been made, raises a fair presumption that service was made in time to give the court jurisdiction to make the order of commitment.

Certiorari to Kalamazoo; Adams, J. Submitted June 4, 1907. (Calendar No. 22,299.) Decided July 15, 1907.

Habeas corpus proceedings by Anton Schnapka to obtain the release of Katie Schnapka, his wife, from the Michigan Asylum for the Insane. There was an order remanding her to the custody of the asylum, and petitioner brings certiorari. Affirmed.

*Harry C. Howard,* for petitioner.

*John E. Bird,* Attorney General (*Arthur P. Hicks,* of counsel), for respondent.

MOORE, J. This is certiorari to review habeas corpus proceedings had before the circuit judge of Kalamazoo county, who after a hearing remanded Katie Schnapka to the custody of the Michigan Asylum for the Insane.

Counsel for the relator say:

"The only point relied upon by your petitioner, and the only point sought to be raised by this petition, is that the probate court had no jurisdiction to make the order, a copy of which is contained in the petition for the writ of habeas corpus and in the answer of the medical superintendent, for the reason that the records in the probate court do not show that service of a notice of the petition was had on Katie Schnapka at least 24 hours before the hearing as required by section 16, Act No. 217 of the Public Acts of 1903."

The material parts of the order by virtue of which Mrs. Schnapka is detained read as follows:

"At a session of said court held at the probate office in the city of Kalamazoo, in said county, on the 1st day of April, A. D. 1905.

"Present: Hon. George P. Hopkins, judge of probate.

"In the Matter of Katie Schnapka, Insane.

"This day having been appointed for hearing the petition of Antoine Schnapka, praying that said Katie Schnapka be admitted to the Michigan Asylum as a public patient, and due notice of the hearing on said petition having been given as required by law and as directed

by said court, the said petitioner appeared personally. It appearing to the court, upon filing the certificates of two legally qualified physicians and after a full investigation of said matter, without the verdict of a jury, that said Katie Schnapka is insane, and a fit person for care and treatment in said asylum, and that she should be admitted to said asylum as a public patient."

Prior to making the order just quoted, the court made an order which, omitting some of the formal parts thereof, reads as follows:

"At a session of the probate court for the county of Kalamazoo, holden at the probate office in Kalamazoo, in said county, on Friday, the 31st day of March, in the year one thousand nine hundred and five.
"Present: Hon. George P. Hopkins, judge of probate.
"In the matter of Katie Schnapka, Alleged Insane.
"On reading and filing the petition, duly verified of Antoine Schnapka, of the city of Kalamazoo, alleging that said Katie Schnapka, of the second ward of the city of Kalamazoo, is insane, and praying that she may be admitted on the order of said court, to the Michigan Asylum for the Insane at Kalamazoo, and there supported as a public patient.
"Thereupon it is ordered that Saturday, the 1st day of April, A. D. 1905, at 4 o'clock in the afternoon, be assigned for the hearing of said petition, and that the said Katie Schnapka and all other persons interested in said matter are required to appear at a session of said court, then to be holden at the probate office in Kalamazoo, in said county, and show cause, if any there be, why the prayer of the petitioner should not be granted.
"And it is further ordered, that said petitioner give notice to the persons interested in said matter of the pendency of such petition, and the hearing thereof, by causing a copy of this order to be personally served at least 24 hours previous to said time of hearing upon the said Katie Schnapka."

Upon the back of the last-named order is a sworn return by John P. Shields "that on the 31st day of March, A. D. 1905, he served a true copy of the order, * * * on the within named Katie Schnapka," by delivering the same to her personally in the county of Kalamazoo. The

circuit judge, upon a hearing, was of the opinion that the probate court had jurisdiction to make the order. He also found as a fact that Mrs. Schnapka was insane at the time she was committed to the asylum, and is still insane.

It is the contention of counsel for the relator that the authority of the probate court to deal with insane persons is derived wholly from the statute, and that because it does not affirmatively appear that service was made 24 hours before the hearing that the probate court had no jurisdiction to make the order. The proceedings in probate court were had under the provisions of Act No. 217 of the Public Acts of 1903. Section 16 of that act provides for a 24-hour notice. Counsel say fractions of days are not recognized in law; that in Michigan the rule for the computation of time always excludes issuance day while the appearance day is included. We think this rule does not apply where the requirement relates to notices measured by hours. Act No. 217 does not provide in terms the manner in which a return of service of notice of hearing shall be made. In *Gillett* v. *Needham*, 37 Mich. 147, there is a pretty clear intimation that proof of the service of an order might be shown in other ways than by a sworn return. It does appear from the record that the petition for the commitment of Mrs. Schnapka was made by her husband on March 31st. It stated his wife was a resident of the second ward of Kalamazoo. The sessions of the probate court are held in Kalamazoo. On the same day the petition was made the court made an order for a hearing on the following day at 4 p. m., and requiring a copy of the order to be personally served at least 24 hours upon Mrs. Schnapka. Upon the same day this order was made a sworn return of personal service was made. Upon the 1st of April a hearing was had, and an order was made in which it was recited, " and due notice of the hearing on said petition having been given as required by law and as directed by said court."

We have then a petition filed by the husband in the

probate office on March 31st, asking for the commitment of an alleged insane wife who resides in the same city where the court is held. Following the making of the petition, an order of hearing is made, fixing the time at 4 p. m. of the following day at the probate office in Kalamazoo. On March 31st sworn proof of personal service of the order is made. On April 1st a hearing is had, and, as before stated, an order is made in which it is recited that due notice as required by law and directed by the court had been made. It is clear that, if service of the order was made any time before 4 p. m. on March 31st, the full time directed by the court would have elapsed. We think it a fair presumption from what does appear that service was made in time to give the court jurisdiction. Having reached this conclusion, it is unnecessary to discuss the other interesting questions presented by the brief from the office of the attorney general.

Judgment of the court below is affirmed.

McALVAY, C. J., and CARPENTER, GRANT, and BLAIR, JJ., concurred.